*Formatted for Electronic Distribution*                                                                                    *For Publication*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

Filed & Entered
On Docket
August 1, 2014

_____

In re
    Scott Carpenter,
            Debtor.
_____

Garceau Auto Sales, Inc.,
            Plaintiff,
    v.
Scott Carpenter,
            Defendant.
_____

Chapter 7
Case # 13-10080

Adversary Proceeding
# 13-1011

Appearances:   John C. Gravel, Esq.                           James B. Anderson, Esq.
                       Burlington, VT                                     Ryan Smith & Carbine LTD
                       For the Defendant                            Rutland, VT
                                                                                                    For the Plaintiff

## *Amended*[i] MEMORANDUM OF DECISION
### DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

       Garceau Auto Sales, Inc. filed a complaint against Scott Carpenter, seeking a determination that the $55,500 debt Mr. Carpenter owes to Garceau Auto Sales, Inc. in connection with Mr. Carpenter's purchase of two automobiles is not dischargeable in bankruptcy. Garceau Auto Sales, Inc. asserts that Mr. Carpenter incurred the subject debt using false pretenses, false representations, or actual fraud. Mr. Carpenter filed a motion for summary judgment asking this Court to enter a judgment in his favor and dismiss the complaint, arguing that, at the time of the salient transaction, he suffered from mental illness and lacked the mental capacity to form the intent to defraud Garceau Auto Sales, Inc. He relies upon reports of three mental health professionals and the finding of a state court jury, as well as an acquittal by a New York state court in a criminal action including the same transaction at dispute here, to support his position. The Defendant also seeks summary judgment on his affirmative defense of collateral estoppel. Previously, the Court determined that the parties needed to supplement the record with respect to the admissibility of the psychiatric reports and the import of the state court ruling. They have done so.

       For the reasons set forth below, and based upon the expanded record, the Court finds there are material facts in dispute and therefore summary judgment must be denied.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered by Chief Judge Christina Reiss on June 22, 2012. The Court declares the claims addressed by the instant motion to be core matters under 28 U.S.C. § 157(b)(2)(I), over which this Court has constitutional authority to enter a final judgment.

## ISSUES PRESENTED

The Court must determine whether all material facts are undisputed and, if so, whether those undisputed material facts establish the Defendant is entitled to judgment as a matter of law, denying Plaintiff the relief it seeks in the complaint and declaring his debt to the Plaintiff not excepted from discharge. The two underlying issues the Court must address are whether the Defendant has established the right to invoke the affirmative defense of collateral estoppel (also known as issue preclusion) and whether the medical reports the Defendant included in his motion for summary judgment (the "Reports")[1] are admissible.

## PROCEDURAL HISTORY

On February 7, 2013, Scott Carpenter (the "Debtor" or "Defendant") filed a voluntary Chapter 7 petition for relief. On July 23, 2013, Garceau Auto Sales, Inc. (the "Plaintiff") filed a complaint initiating this adversary proceeding, which the Plaintiff amended on July 31, 2013 and August 1, 2013 (the "Complaint"). The Defendant filed an answer to the Complaint on August 15, 2013, which the Defendant amended on October 8, 2013. On April 17, 2014, the Defendant filed a motion for summary judgment (the "Motion") accompanied by a statement of undisputed material facts (the "SUMF"). The Plaintiff filed an opposition to the Defendant's Motion and a response to the Defendant's SUMF on May 15, 2014 (the "Response"), to which the Defendant filed a reply on June 10, 2014 (the "Reply"). On June 13, 2014, the Court entered a memorandum of decision and order deferring decision on Plaintiff's motion for summary judgment and directing the parties to supplement the record with respect to the admissibility of the Reports under Rule 56(c)(2), and the applicability of claim preclusion to this proceeding. The parties have timely filed their supplements (respectively, "Defendant's Supplement" and "Plaintiff's Supplement").

## UNDISPUTED MATERIAL FACTS

Based upon the record in this proceeding and, in particular, the SUMF and Response, the Court finds the following facts to be material and undisputed:

1. Beginning in 1986, the Defendant owned and operated a used car business known as Mansfield

Motor Car, Inc. ("Mansfield Motor"), a Vermont corporation. SUMF ¶ 1; Response ¶ 1.

2. Beginning in 1986, the Defendant was the sole shareholder and President of Mansfield Motor. SUMF ¶ 1; Response ¶ 1.

3. On or about June 20, 2012, the Defendant purchased from the Plaintiff a 1955 Chevrolet 210 (VIN # B550053530), and paid for it with a check in the amount of $35,000. SUMF ¶ 21; Response ¶ 21.

4. The $35,000 check was dishonored for insufficient funds. SUMF ¶ 23; Response ¶ 23.

5. To resolve the dishonored check, the Defendant and the Plaintiff agreed to "swap" cars and a check for the difference. SUMF ¶ 24; Response ¶ 24.

6. On July 6, 2012, the Plaintiff gave the Defendant a second vehicle worth $37,500, and the Defendant gave the Plaintiff four vehicles worth a total of $55,000, together with a check for $17,000, for a total value of $72,500. SUMF ¶ 25; Response ¶ 25.

7. The $17,000 check cleared. SUMF ¶ 26; Response ¶ 26.

8. All four vehicles the Defendant gave to the Plaintiff were encumbered by liens held by the Defendant's creditors (the "Secured Creditors"). SUMF ¶ 27-28; Response ¶ 27-28.

9. On or about July 18, 2012, the Secured Creditors removed a number of vehicles from Mansfield Motor's lot, including the two vehicles the Plaintiff had conveyed to the Defendant during the "swap." SUMF ¶ 31-35; Response ¶ 31-35.

10. On July 25, 2012, the Defendant was involuntarily admitted to Fletcher Allen Health Care's psychiatric unit. SUMF ¶ 36; Response ¶ 36.

11. During the month of October 2012, the State of New York brought charges against the Defendant for several bad checks he had written, drawn on Mansfield Motor's bank account, including the $35,000 check written to the Plaintiff. SUMF ¶ 46; Response ¶ 46.

12. On March 14, 2014, the Supreme County Court of New York for Clinton County found the Defendant was not responsible for the offense of bad check writing because at the time he wrote the checks he had a "mental disease or defect." SUMF ¶ 53; Response ¶ 53.

---

[1] This, and all capitalized terms in this decision, has the same meaning here as they did in the Court's earlier memorandum of decision on the Defendant's motion for summary judgment (doc. # 22).

LEGAL STANDARD

Summary judgment is proper if the record shows no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056; see also Bronx Household of Faith v. Bd. of Educ. of the City of New York, 492 F.3d 89, 96 (2d Cir. 2007). The moving party bears the burden of showing that no genuine issue of material fact exists. See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The substantive law identifies those facts that are material; only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 248. Factual disputes that are irrelevant or unnecessary are not material. Id. In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. Id. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir. 2004). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party. Scott v. Harris, 550 U.S. 372, 378 (U.S. 2007); see Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 579 (2d Cir. 2006).

If the moving party meets its initial burden, the burden then shifts to the nonmoving party to come forward with evidence sufficient to create a genuine dispute as to a material fact for trial. First Am. Title Ins. Co. v. Moses (In re Moses), 2013 Bankr. LEXIS 2917, *13-14 (Bankr. E.D.N.Y. 2013). To meet this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, it must present "significant probative evidence" that a genuine dispute of fact exists. Anderson, 477 U.S. at 249 (citation and internal quotation marks omitted).

DISCUSSION

**I. Does Issue Preclusion Apply?**

Based on its potentially dispositive effect on the Defendant's Motion, the Court will first address the Defendant's argument of issue preclusion, also called collateral estoppel. Proctor v. LeClaire, 715 F.3d 402, 414 (2d Cir. 2013). "Under the doctrine of collateral estoppel, when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." United States v. United States Currency in the Amount of $119,984.00, 304

4

F.3d 165, 172 (2d Cir. 2002) (quoting Schiro v. Farley, 510 U.S. 222, 232, 127 L. Ed. 2d 47, 114 S. Ct. 783 (1994) (internal quotation marks omitted). Collateral estoppel "applies to bankruptcy proceedings where the requisite common law elements are met." Strauss v. Strauss (In re Strauss), 2006 Bankr. LEXIS 2219, 2006 WL 2583645 at *3 (Bankr. S.D.N.Y. July 21, 2006) (citing Grogan v. Garner, 498 U.S. 279, 284, n.11, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); see Bean v. Pion (In re Pion), 2007 Bankr. LEXIS 3578, *15-17 (Bankr. D. Vt. Oct. 22, 2007). "Parties may invoke collateral estoppel to preclude relitigation of the elements necessary to meet a § 523(a) exception." Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006).

"When determining whether a state court judgment has such a preclusive effect, we apply the relevant state law of collateral estoppel." Duncan v. Duncan (In re Duncan), 448 F.3d 725, 728 (4th Cir. 2006); see Denton v. Hyman (In re Hyman), 502 F.3d 61 (2d Cir. 2007); see also Poventud v. City of New York, 750 F.3d 121, 157, n. 5 (2d Cir. 2014).  Since the subject judgment was entered by a New York court, it is the law of that state which this Court must apply to ascertain whether collateral estoppel applies in this adversary proceeding. Similar to federal law, New York law holds that "[c]ollateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity." Buechel v. Bain, 97 N.Y.2d 295, 303 (N.Y. 2001). In the application of collateral estoppel, privity represents an initial threshold question because "[c]onsiderations of due process prohibit personally binding a party by the results of an action in which that party has never been afforded an opportunity to be heard." Gramatan Home Investors Corp. v. Lopez, 46 N.Y.2d 481, 486 (N.Y. 1979); see Buechel, 97 N.Y.2d at 304 (treating privity as an "initial question" before turning to other elements necessary for collateral estoppel); D'Arata v. New York Cent. Mut. Fire Ins. Co., 76 N.Y.2d 659, 664 (N.Y. 1990).

In the absence of privity between the party in the current matter, against whom collateral estoppel is sought, and the party in a previous matter, against whom an issue was determined, it is not appropriate to apply collateral estoppel. See, e.g., Juan C. v. Cortines, 89 N.Y.2d 659, 672 (N.Y. 1997) (holding that collateral estoppel should not apply as parties were not in "legal or practical privity"); see also Matter of New York Cent. Mut. Fire Ins. Co. v. Steiert, 43 A.D.3d 1065, 1067 (N.Y. App. Div. 2d Dep't 2007); Carter v. Gospel Temple Church of God in Christ, 19 A.D.3d 353, 354 (N.Y. App. Div. 2d Dep't 2005). The burden of establishing privity is on the party seeking the benefit of the doctrine – here, the Defendant. State of New York v. Zurich Am. Ins. Co., 106 A.D.3d 1222, 1223 (N.Y. App. Div. 3d Dep't 2013); accord United States v. Alfano, 34 F. Supp. 2d 827, 834 (E.D.N.Y. 1999); see Hallinan v. Republic Bank & Trust Co., 519 F. Supp. 2d 340, 358 (S.D.N.Y. 2007).

5

Once a court determines the necessary privity of parties is present, "only two requirements must be satisfied." D'Arata, 76 N.Y.2d at 664. First, the party seeking the benefit of collateral estoppel must prove that the identical issue was necessarily decided in the prior action and is decisive in the present action. Id.; see Buechel, 97 N.Y.2d at 303-304. Second, the party to be precluded from relitigating an issue must have had a full and fair opportunity to contest the prior determination. Id. However, "[i]ssue preclusion will apply only if it is quite clear that these requirements have been satisfied, lest a party be precluded from obtaining at least one full hearing on his or her claim." McKithen v. Brown, 481 F.3d 89, 105 (2d Cir. 2007) (emphasis in original) (internal quotations and citations omitted). "Significantly, '[t]he party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation and the prior determination, whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action.'" Cortines, 89 N.Y.2d at 667.

In order for this Court to apply the doctrine of collateral estoppel in this adversary proceeding, the Defendant must demonstrate that (i) the Plaintiff and the State were in privity in the prior action, and (ii) the identical issue was necessarily decided in the criminal case and is decisive to adjudication of the instant adversary proceeding. If the Defendant were to demonstrate both privity and identity of issue, the Court would apply the doctrine of collateral estoppel unless the Plaintiff could demonstrate that it lacked a full and fair opportunity to contest the prior determination. Moreover, since the Defendant is seeking a ruling on the import of this affirmative defense in a motion for summary judgment, it is his burden to demonstrate (1) there is no genuine issue of material fact on any of the elements of this equitable doctrine, and (2) based upon those undisputed facts, he is entitled to have collateral estoppel applied, as a matter of law.

### Is there privity?

Turning to the first element of collateral estoppel, the Court must determine whether the Plaintiff was in privity with the State in the prior criminal proceeding. See Buechel, 97 N.Y.2d at 303; Cortines, 89 N.Y.2d at 672. Both parties address the initial threshold question of privity, albeit without identifying it as such. The Defendant argues that the State adequately represented the Plaintiff's interests, but provides no specific explanation of how it did so. Defendant's Supplement, p. 3-4. The Plaintiff argues since it was not a named party in the prior criminal action, and neither controlled prosecution of that action nor determined the litigation strategy, there can be no finding its interests were actually litigated in the criminal action. Plaintiff's Supplement, p. 6-7.

When describing privity in the context of collateral estoppel, the New York courts have

emphasized that it is "amorphous" and not easy to define. For example, one well known decision on the topic includes the following general description:

> … the term privity does not have a technical and well-defined meaning. Rather, it is an amorphous concept not easy of application, and includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action. Importantly, all the circumstances must be considered from which one may infer whether or not there was participation amounting to a sharing in control of the litigation.

Cortines, 89 N.Y.2d at 667-668 (internal citations and quotations omitted). New York's highest court subsequently made clear that since issue preclusion has such a dramatic impact on a party's rights, all doubts with respect to the privity inquiry should be resolved against imposing preclusion:

> [i]n addressing privity, courts must carefully analyze whether the party sought to be bound and the party against whom the litigated issue was decided have a relationship that would justify preclusion, and whether preclusion, with its severe consequences, would be fair under the particular circumstances. Doubts should be resolved against imposing preclusion to ensure that the party to be bound can be considered to have had a full and fair opportunity to litigate.

Buechel, 97 N.Y.2d at 304-305 (emphasis added).

Additionally, the Buechel court cautioned that ultimately, as an equitable doctrine, the determination of whether collateral estoppel applies in any particular instance must be made on a case-by-case basis, with a focus on whether doing so would be fair:

> The doctrine [of collateral estoppel], however, is a flexible one, and the enumeration of these elements is intended merely as a framework, not a substitute, for case-by-case analysis of the facts and realities. In the end, the fundamental inquiry is whether relitigation should be permitted in a particular case in light of fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results. No rigid rules are possible, because even these factors may vary in relative importance depending on the nature of the proceedings.

Id. at 304 (internal citations and quotations omitted); see D'Arata, 76 N.Y.2d at 664 (holding that collateral estoppel is grounded on concepts of fairness and should not be rigidly or mechanically applied).

The parties have presented only a few facts which bear on privity, and none of those facts are in dispute. Those undisputed material facts demonstrate that (i) the State of New York brought charges against the Defendant for bad checks he wrote, including the $35,000 check written to the Plaintiff, SUMF ¶ 46, doc. # 20-1, ¶ 46; (ii) the New York state court found the Defendant to be not responsible for his conduct due to a mental disease or defect, SUMF ¶ 53, doc. # 20-1, ¶ 53; and (iii) although the Plaintiff was the complaining witness in the state court proceeding, it was not a named party in the state court action, Plaintiff's Supplement, p. 7. The Plaintiff has taken the position that while a conviction in the state

7

court would have been dispositive on the issue on the Defendant's fraudulent intent here (based upon there being common questions of law and fact in the criminal action and this adversary proceeding), an acquittal in the criminal action does not have a similar preclusive effect. Doc. # 15 ¶ 5, 7.

The instant scenario is remarkably similar to that faced by the bankruptcy court in In re Brownlee, 83 B.R. 836 (Bankr. N.D. Ga. 1988). In Brownlee, prior to filing for bankruptcy relief, the debtor had been indicted on two counts of murder and one count of aggravated assault, and was found not guilty by a state court jury, on all counts, by reason of insanity. In the bankruptcy case, the surviving spouse of one of the defendant's victims objected, under § 523(a)(6), to the dischargeability of her claim arising from the death of her husband. She asserted that the defendant/debtor's assault of her spouse constituted willful and malicious conduct. The defendant countered that the spouse was collaterally estopped from litigating the issue of willfulness and maliciousness as a result of the previous verdict of not guilty by reason of insanity. Applying Georgia law – which, as under New York law, permits the application of collateral estoppel against a party who was in privity with a party in a prior action, so long as the party to be collaterally estopped had a full opportunity to litigate the issue – the bankruptcy court determined that the surviving spouse was neither a party to, nor in privity with a party to, the criminal proceeding. Id. at 839. The court determined that the prosecutor in the criminal matter represented the State of Georgia, not the surviving spouse, and although the prosecutor and the spouse were both interested in convicting the defendant, "merely sharing an interest in the same issue is not enough to establish privity." Id. at 839-40. Based upon its determination that the defendant had failed to establish privity, the Court refused to apply the doctrine of collateral estoppel and proceeded to try the exception to discharge claim in the bankruptcy case.

Likewise, the Defendant in this case has failed to establish the Plaintiff had the necessary procedural relationship with the State in the state court criminal action to demonstrate privity. The Defendant has not identified any facts or circumstances in the criminal case proceeding to show that the Plaintiff had a sufficient nexus with the New York state proceeding to demonstrate privity. Given this dearth of facts, the Defendant has not shown the Plaintiff shared control of the state court litigation, or that Plaintiff's interests were represented by the State. This Court cannot "carefully analyze whether the party sought to be bound and the party against whom the litigated issue was decided have a relationship that would justify preclusion." Buechel, 97 N.Y.2d at 304-305. Therefore, the Court concludes that the Defendant has failed to demonstrate he is entitled to judgment as a matter of law on the issue of collateral estoppel due to his failure to establish the threshold showing of privity and consequently declares the Defendant's affirmative defense of collateral estoppel to be unavailing.

8

## II. Are the Defendant's Reports Admissible for Purposes of Summary Judgment?

The Court next turns to the admissibility of the Reports upon which the Defendant seeks to rely in his motion for summary judgment. In its previous memorandum of decision, the Court held that the Reports were hearsay and thus not admissible unless the Defendant identified a federal statute, Rule of Evidence, or other rule identifying an exception under which they were are admissible in their current form. The Court also stated that although Federal Rule of Evidence 56(c)(2) does not require evidence to be presented in admissible form at the summary judgment stage, it does require the party offering it in inadmissible form at that time to describe the admissible form in which it could be presented at trial. The Court directed the Defendant to promptly file whatever documents and arguments he believed demonstrated either that (1) the evidence he relied upon in his Motion is admissible in its current form, or (2) the subject evidence could be presented in an admissible form at trial.

### Are the Reports admissible in their current form?

The Defendant first argues that his statements to medical professionals regarding his state of mind, intent, mental feelings, and emotional condition are admissible hearsay as statements of his "then-existing state of mind ... or emotional, sensory, or physical condition ... " under Federal Rule of Evidence 803(3). Defendant's Supplement, p. 2-3. Admissible statements under Federal Rule of Evidence 803(3) are statements such as, for example, "I am tired," or "I am depressed." See 1-803 A. J. Stephani & Glen Weissenberger, Weissenberger's Federal Evidence Courtroom Manual, § 1 (2014). Based on the Court's review, none of the three Reports upon which the Defendant relies appear to contain any statements by the Defendant concerning his then-existing state of mind, nor does the Defendant specifically identify any statements in the Reports he asserts would be admissible under this rule.[2] The Reports consist of medical professionals' conclusions and diagnoses of the Defendant, apparently based on their examination of the Defendant and, in some instances, upon their review of the Defendant's medical history. Doc. # 19. They do not appear to quote or refer to any specific statements the Defendant made concerning his mental state at the time of examination. Id. Moreover, all three medical professionals examined the Defendant after the conduct at issue occurred. Id. "A statement may be proffered to prove the declarant's then existing state of mind as the basis for an inference that declarant had previously acted in a particular way only in instances involving the declarant's will." 1-16 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence Manual, § 16.04 (Joseph M. McLaughlin, ed., 2014); see United States v. Di Maria, 727 F.2d 265, 270 (2d Cir. N.Y. 1984); United States v. Marin, 669 F.2d 73, 84 (2d Cir. N.Y. 1982). Thus, although the Reports do contain some statements evidencing the Defendant's recollection of his then-existing state of mind

---

[2] The Defendant's SUMF repeatedly cites to the Reports themselves, primarily the examiners' observations of the Defendant's behavior and medical history, and their medical conclusions based upon those observations. See SUMF ¶ 6-20, 37-44.

during his alleged manic period – for example, that Defendant "felt fine" and was "on top of the world" – those statements are "statement[s] of memory or belief to prove the fact remembered or believed," and as such, do not fall within the exception permitted by Rule 803(3).

The Defendant next argues that the Defendant's statements, and the medical records citing his statements and describing his behavior, state of mind, and treatment are admissible as statements made for, and reasonably pertinent to, medical diagnosis or treatment. See Defendant's Supplement p. 2-3. Again, the Defendant does not identify with particularity which statements he asserts would be admissible on this theory. While Rule 803(4) would permit the introduction of the Defendant's statements as a basis for explaining a physician's conclusions, see 2 Kenneth S. Broun et al., McCormick On Evid. § 277 (Henry Brandis ed., 7th ed.), it applies only to statements made by the person seeking or receiving medical treatment. See Field v. Trigg County Hosp., Inc., 386 F.3d 729, 735-736 (6th Cir. Ky. 2004) (holding consulting physicians' statements to treating physicians inadmissible hearsay); Weinstein's Evidence Manual, supra, § 16.05. Even those courts that take a more permissive approach to Rule 803(4) only extend the exception to individuals seeking treatment on the patient's behalf. See, e.g., Mendez v. United States, 732 F. Supp. 414, 423 (S.D.N.Y. 1990) (discussing parent or guardian's statements on behalf of a child). Rule 803(4) does not permit the introduction of reports compiled by physicians unless they are compiled in anticipation of medical treatment. The Reports do chronicle the Defendant's medical history and past symptoms, but they were not "made for ... medical diagnosis or treatment." At the time the Reports were prepared, the Defendant had already received a diagnosis and treatment. Thus, the Reports do not fall within the exception of Rule 803(4).

Finally, the Defendant argues that the Reports are admissible as records of a regularly conducted activity under Federal Rule of Evidence 803(6):

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
> …
> (6) Records of Regularly Conducted Activity.  A record of an act, event, condition, opinion, or diagnosis if:
> (A)   the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> (B)   the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C)   making the record was a regular practice of that activity;
> (D)   all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E)   neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). If the Reports were hospital, or similar, records made at the time of treatment, they might qualify as business records under Rule 803(6). See United States v. Sackett, 598 F.2d 739, 742 (2d

Cir. 1979) (permitting introduction of hospital report under Rule 803(6)); McCormick On Evid., supra, § 293. However, the Reports are not contemporaneously created hospital records. One Report is the result of a judicially ordered examination of the Defendant, prepared by a psychiatrist approximately one year after the conduct at issue. Doc. # 19. The other two Reports are "summary" reports prepared by medical experts who treated the Defendant and had access to his medical history and, although undated, they appear to have been created after the Defendant's diagnosis and treatment, in preparation for the Defendant's state court litigation. Id.

The Defendant has failed to demonstrate the Reports satisfy a number of the requirements for admission under Rule 803(6). First, the Reports do not appear to have been prepared at or near the time the Defendant was allegedly actively manifesting symptoms of bipolar disorder. Nor has the Defendant presented information establishing that they were made at or near the time of diagnosis. Furthermore, none of the records appear to have been kept in the course of a regularly conducted activity, nor was making the record a regular practice of that activity. On the contrary, the creation of all three Reports appears to have been prompted by the initiation of criminal litigation against the Defendant. See United States v. Freidin, 849 F.2d 716, 723 (2d Cir. 1988) (holding records not shown to have been made pursuant to a regular practice not admissible); United States v. Lemire, 720 F.2d 1327, 1350-51 (D.C. Cir. 1983) ("[w]hen a document is made for something other than a regular business purpose, it does not fall within the business records exception").

Moreover, even if the Court were to find the Reports satisfied the requirements of Rule 803(6)(A), (B), and (C), none of those conditions have been demonstrated "by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12)." Without such testimony or, more relevant to the instant posture of summary judgment, an appropriate certification, the exception set out in Rule 803(6) is unavailable.

Having previously found that the Reports are inadmissible hearsay, and having now found that none of the exceptions to the hearsay rule identified by the Defendant apply, the Court concludes that the Reports are not admissible in their current form.

<u>Could the Reports be presented in an admissible form at trial?</u>

In response to this Court's order providing the Defendant an opportunity to address how the Reports could be presented in an admissible form at trial, the Defendant's sole statement is that "[e]ach of the medical professionals who prepared the reports are available for testimony and authentication, and can attest personally to the opinions set forth in his or her report." Testimony by the medical professional who prepared the reports would reduce the evidence to an admissible form. See Jones v. UPS Ground Freight, 683 F.3d 1283, 1294 (11th Cir. 2012) ("[t]he most obvious way that hearsay testimony can be reduced to admissible form is to

11

have the hearsay declarant testify directly to the matter at trial"). However, the burden rests on the proponent – here, the Defendant – to explain the admissible form that is anticipated. ForeWord Magazine, Inc. v. OverDrive, Inc., 2011 U.S. Dist. LEXIS 125373 (W.D. Mich., Oct. 31, 2011). The single statement the Defendant has presented, even after being given an opportunity to supplement the record specifically on this issue, is insufficient to satisfy the Defendant's burden.

Rule 56(c)(2) permits a party to object that cited material cannot be presented in a form that would be admissible in evidence, at which point the burden is on the proponent to explain the admissible form anticipated. However, neither Rule 56(c)(2) nor the Advisory Committee Notes indicate in what way that burden may be satisfied. Moreover, this Court is not aware of (and the Defendant has not cited) any case addressing that question. A leading treatise, however, has addressed the issue at length, and advises as follows:

> The better reading of the rule is that the court may probe behind the party's assertion that an admissible form is possible and, in its discretion, decline to consider the proof in its inadmissible form. Consider a discrimination case in which the defendant seeks summary judgment on the grounds that the plaintiff lacks evidence sufficient to sustain her claim. The plaintiff responds that she has proof that the decision-maker admitted to discriminating against her in a conversation with two co-workers, Amy and Ben. The plaintiff does not offer affidavits from Amy or Ben, however, but instead submits her own affidavit repeating what Amy and Ben said they heard the defendant say. When the defendant challenges the proof as hearsay, the plaintiff responds that Amy and Ben are alive and she intends to call them as witnesses at trial. The court should be free to ask the plaintiff what reason she has for believing that Amy and Ben will in fact be available to testify at trial. The court should also be free to ask the plaintiff her reasons for not obtaining sworn statements or sworn testimony from Amy and Ben at this time. It might be one thing if Amy and Ben are currently out of the country (but expected to return) or if they declined to submit affidavits because they still work for the employer and do not wish to get involved. It might be another thing if Amy and Ben have been in the area the whole time but the plaintiff simply chose not to bother with contacting them.
>
> Depending on the circumstances, the failure to secure sworn statements at the summary-judgment stage--or to confirm that the witnesses can and will testify as expected later--can significantly undercut the claim that the statements actually can be presented in an admissible form at trial. This is not to say that judges should always or reflexively insist that proof be reduced to trial-admissible form at the summary-judgment stage whenever it would be possible to do so (such as when the declarant is available). It is simply to say that courts may require that it be done when the assertion that the proof will be available in a trial-admissible form later seems wholly speculative or otherwise unreliable.

11 James WM. Moore, Moore's Federal Practice - Civil § 56.91 (Daniel R. Coquillette et al., 3d Ed.).

This Court finds that it has discretion to probe the Defendant's assertion that the evidence it relies upon could be presented in an admissible form. Concluding that the Court has such discretion aligns with the Second Circuit's continued position that "only admissible evidence need be considered by the trial

12

court in ruling on a motion for summary judgment," and a "[trial] court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence." Porter v. Quarantillo, 722 F.3d 94, 97 (2d Cir. 2013). The Court concludes that the Defendant's assertion that the "medical professionals ... are available for testimony and authentication" is, without more, insufficient to meet the Defendant's burden of establishing that the material could be presented in an admissible form. There is no indication from the record as to why the Defendant believes the declarant authors of the Reports will be available to testify at trial, nor does Defendant's statement actually state he intends to call them as witnesses. Further, there is no evidence the Defendant has contacted each declarant and verified each declarant's willingness and availability to testify at trial. There is nothing in the record to show the declarants are even aware of the instant adversary proceeding. Thus, the Court concludes the Defendant has failed to meet his burden to establish the Reports could be presented in an admissible form at trial.

Since the Defendant has not established either that the Reports are admissible in their current form or that they could be admitted at trial, the Court finds that the Reports are inadmissible for purposes of this summary judgment motion.

### III. Is the Defendant Entitled to Summary Judgment?

In its previous memorandum of decision, the Court stated that if the Defendant failed to demonstrate the Reports are admissible in their current form and failed to show they could be presented in an admissible form at trial, the Court would sustain the Plaintiff's objections to summary judgment relief, and schedule a trial to adjudicate the merits of the Complaint. Having made the preliminary determinations regarding the applicability of collateral estoppel and admissibility of the Reports, the Court now focuses on whether the Defendant is entitled to summary judgment.

As set forth in the Court's memorandum of decision:

> The Complaint in this proceeding seeks an Order declaring that the debt the Defendant owes to the Plaintiff is excepted from discharge because the Defendant incurred it "through false pretenses, a false representation or actual fraud." 11 U.S.C. § 523(a)(2)(A). In moving for summary judgment, the Defendant asserts that he is entitled to a judgment denying the relief the Plaintiff seeks in the Complaint, based upon the record he has established in the documents he has filed, i.e., without need for trial. To rule on the Motion, the Court must first identify the legal standard the Plaintiff must meet to obtain the relief in the Complaint, and then determine if the undisputed facts before the Court are sufficient to demonstrate the Plaintiff is not entitled to judgment for that relief as a matter of law, based solely upon the undisputed facts in the record.
>
> …
>
> The parties do not dispute that the Defendant's conduct satisfies the first, fourth, and fifth elements [of § 523(a)(2)(A)]. See undisputed facts above ## 3-9. Although the Defendant sets forth multiple arguments in support of his position that the Court

13

should deny the relief Plaintiff seeks in the Complaint, all of the Defendant's arguments pertain to the second and third elements. Specifically, the Defendant avers that he suffers from bipolar disorder and that, during the period he incurred the debt at issue, he had entered into a manic phase characterized by delusions of grandeur, insomnia, risky financial decisions, impulsive purchases, and a disconnect with his financial situation. See doc. # 19, p. 7-8. Thus, the Defendant concludes he lacked the requisite mental capacity to comprehend that his representations were false and that his actions were deceptive. Id. Alternatively, the Defendant argues that he genuinely intended to repay the Plaintiff – he was simply irrationally optimistic about his ability to do so, as a result of his mental illness. Id. at p. 11-12.

The Plaintiff, in its opposition to the Motion, argues that the Defendant's mental capacity, and subsequently the Defendant's knowledge and intent, is a disputed issue of material fact that must be decided by an evidentiary hearing. See doc. # 20, p. 1.
Doc. # 22, p. 4-5.

The crucial issue presented in both the adversary proceeding and the motion for summary judgment is the Defendant's intent at the time the Defendant incurred his debt to the Plaintiff. The Defendant's mental state at the time of that conduct, the potential presence of a mental disorder, and the effect of any mental disorder on the Defendant's conduct and ability to reach a decision to defraud are all material to the determination of the Defendant's intent. Cognizant that "issues involving a determination as to an individual's state of mind or credibility make poor subjects for summary judgment" the Court finds the Defendant has failed to establish the absence of a genuine issue of material fact. Tveraas v. Coffey, 818 F. Supp. 75, 79 (D. Vt. 1993) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (U.S. 1986)).

Since the Plaintiff has contested them, and this Court has determined the Reports are not admissible for purposes of summary judgment, the only undisputed material facts bearing on the Defendant's intent are: (i) the Defendant was involuntarily admitted to Fletcher Allen Health Care's psychiatric unit on July 25, 2012, and (ii) on March 14, 2014, the Supreme County Court of New York for Clinton County found the Defendant was not responsible for the offense of bad check writing, because at the time he wrote the checks he had a "mental disease or defect." These facts fall far short of showing the Defendant lacked the requisite intent, at the time of the salient transaction, to defeat the Plaintiff's exception to discharge cause of action. They do not establish, for instance, the Defendant's mental condition at the crucial time, the likely consequences of that mental condition on the Defendant's ability to formulate intent, or the duration or extent of the putative mental condition. The record does not demonstrate, as the Defendant alleges, that the Defendant suffered from bipolar disorder and that, at the time he incurred the debt at issue, he had entered into a manic phase characterized by delusions of grandeur, insomnia, risky financial decisions, impulsive purchases, and a disconnect with his financial

14

situation. There is no undisputed evidence in the record describing the Defendant's conduct at the time he incurred the subject debt, or establishing that the Defendant's conduct could not have been the product of the Defendant's intent to deceive the Plaintiff.

Further, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party. Scott v. Harris, 550 U.S. at 378; see Beth Israel Med. Ctr., 448 F.3d 573 at 579. The sparse record before the Court would permit a number of reasonable inferences in favor of the Plaintiff. Based on the current record, the Court might, for example, infer that (1) the Defendant was involuntarily admitted for a reason that has no bearing on the issue of the Defendant's intent; or (2) between the time of the conduct at issue and the Defendant's involuntary admission, the Defendant developed whatever condition led to his admission; or (3) the Defendant entirely fabricated whatever circumstances led to his admission and the New York court's acquittal. The Court does not make such inferences, but does find the possibility of such reasonable inferences reinforces the Court's conclusion that the Defendant has failed to establish there is no dispute as to the material facts regarding the crucial question of intent.

Even assuming, arguendo, that the Defendant had met its initial burden, the Plaintiff has come forward with evidence sufficient to create a genuine dispute as to a material fact and requiring trial. Specifically, the Plaintiff cites to excerpts from the Defendant's 2004 examination, in which the Defendant states he knew it was wrong to give a bad check to purchase a car, knew it was illegal to write bad checks in substantial amounts, knew it was important to "make good" on the $35,000 bad check at issue, and knew there could be consequences if he did not do so. As such, even if the Reports were admitted for purposes of the summary judgment motion, the Plaintiff has presented sufficient evidence to show there is a genuine dispute regarding the material fact of the Defendant's intent at the time of the transaction between the parties. This compels denial of summary judgment.

## CONCLUSION

For the reasons set out above, the Court finds the Defendant's allegations with regard to his mental state at the time of the subject transaction are material and in dispute, and therefore summary judgment is not proper. The Court denies the admission of the Defendant's Reports at this stage of the litigation. The Court also holds that it would be unfair to apply the equitable principle of issue preclusion to the circumstances presented here because there is no privity between the Plaintiff and the State of New York, and the Defendant has not established cause to preclude the Plaintiff of a full hearing on its claim against the Defendant in this case. Therefore, the Court denies the Defendant's motion for summary judgment on both its prayer for relief under § 523(a) and its affirmative defense of collateral estoppel, and will set a

trial date to adjudicate the issues presented in the Plaintiff's complaint.

This memorandum constitutes the Court's findings of fact and conclusions of law.

August 1, 2014  
Burlington, Vermont

Colleen A. Brown  
United States Bankruptcy Judge

---

[i] This memorandum of decision is amended solely to clarify the relief sought and granted with respect to the Defendant's affirmative defense, in the introduction and conclusion; and to correct an error in the caption.